# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 06 2020, 9:50 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Megan E. Shipley
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Frances H. Barrow
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationship of K.G. and X.G. (Minor Children)

and

K.W. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

April 6, 2020

Court of Appeals Case No. 19A-JT-2516

Appeal from the Marion Superior Court

The Honorable Marilyn A. Moores, Judge

The Honorable Scott B. Stowers, Magistrate

Trial Court Cause Nos.
49D09-1902-JT-191
49D09-1902-JT-192

**Bailey, Judge.**

# Case Summary

[1] K.W. ("Mother") appeals the termination of her parental rights to K.G. and X.G. ("Children"), upon the petition of the Marion County Department of Child Services ("DCS"). Mother presents a single issue for review: whether DCS established, by clear and convincing evidence, the requisite statutory elements to support the termination decision. We affirm.

# Facts and Procedural History

[2] On October 17, 2017, Children were removed from Mother's care upon DCS allegations that Children were Children in Need of Services ("CHINS") due to a lack of stable housing, parental substance abuse, and domestic violence. Children were placed with R.E., the paternal grandmother of Mother's eldest child.[1]

[3] On January 31, 2018, Mother admitted that Children were CHINS, due to Mother's need for assistance in providing a home free from substance abuse and domestic violence. On February 28, 2018, the CHINS court entered a parental participation order. Mother was ordered to undergo a substance abuse assessment and treatment, submit to random drug screens, and participate in

---

[1] Mother had three children by two different fathers. Children's father is J.G. He has signed a consent to termination of his parental rights and is not an active party to this appeal. Mother's eldest child was also removed from Mother's care, but she was placed with her father and is not a subject of this termination proceeding.

home-based case management and domestic violence services. At the CHINS hearing conducted on October 1, 2018, Mother reported that she had not yet engaged in substance abuse services because they were provided on the other side of town.

[4] Mother intermittently visited with Children and had some minimal involvement with other services. Over time, Mother was unsuccessfully discharged from participation in intensive outpatient substance abuse therapy, home-based services, and parenting time sessions. Mother was apparently homeless at times, and sometimes lived with friends or a boyfriend. Her whereabouts were frequently unknown to DCS, or to her attorney.

[5] On February 8, 2019, DCS petitioned to terminate Mother's parental rights to Children. A termination hearing, at which Mother did not appear, was conducted on August 29, 2019. On September 26, 2019, the trial court issued its findings, conclusions thereon, and order terminating Mother's parental rights. She now appeals.

# Discussion and Decision

## Standard of Review – Sufficiency of the Evidence

[6] When we review whether the termination of parental rights is appropriate, we will not reweigh the evidence or judge witness credibility. *In re V.A.*, 51 N.E.3d 1140, 1143 (Ind. 2016). We will consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* In so doing, we give

"due regard" to the trial court's unique opportunity to judge the credibility of the witnesses. *In re I.A.*, 934 N.E.2d 1127, 1132 (Ind. 2010) (citing Indiana Trial Rule 52(A)). We will set aside the trial court's judgment only if it is clearly erroneous. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1229 (Ind. 2013). In order to determine whether a judgment terminating parental rights is clearly erroneous, we review the trial court's judgment to determine whether the evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment. *I.A.*, 934 N.E.2d at 1132.

## Requirements for Involuntary Termination of Parental Rights

[7] "The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children." *In re Adoption of O.R.*, 16 N.E.3d 965, 972 (Ind. 2014). Although parental rights are of a constitutional dimension, the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental responsibilities. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). The State is required to prove that termination is appropriate by a showing of clear and convincing evidence, a higher burden than establishing a mere preponderance. *In re V.A.*, 51 N.E.3d at 1144.

[8] Indiana Code section 31-35-2-4(b)(2) sets out the elements that the DCS must allege and prove by clear and convincing evidence to terminate a parent-child relationship:

(A) that one (1) of the following is true:

    (i)  The child has been removed from the parent for at least six (6) months under a dispositional decree.

    (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

    (iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i)     There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
(ii)    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
(iii)   The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive, and therefore the court need only to find that one of the three requirements of

subsection (b)(2)(B) was established by clear and convincing evidence. *See In re L.S.*, 717 N.E.2d 204, 209 (Ind. Ct. App. 1999).

## Analysis

[10] Mother contends that insufficient evidence supports the termination decision. She does not challenge the sufficiency of the evidence to establish that Children have been removed from the home for the requisite statutory period and there exists a satisfactory plan for their care and treatment. However, she contends that the DCS failed to present clear and convincing evidence of a reasonable probability that she would fail to remedy the conditions that led to Children's removal, that continuation of the parental relationship poses a threat to Children, and termination is in Children's best interests.

[11] As for determining the sufficiency of the evidence regarding remediation of conditions, this invokes a "two-step analysis." *In re E.M.*, 4 N.E.3d 636, 643 (Ind. 2014). First, we identify the conditions that led to removal; and second, we must determine whether there is a reasonable probability that those conditions will not be remedied. *Id.* In the second step, the trial court must judge parental fitness as of the time of the termination hearing, taking into consideration the evidence of changed conditions. *Id.* (citing *Bester*, 839 N.E.2d at 152). The trial court is entrusted with balancing a parent's recent improvements against habitual patterns of conduct. *Id.* The trial court has discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination. *Id.* "Requiring trial courts to give due regard to

changed conditions does not preclude them from finding that parents' past behavior is the best predictor of their future behavior." *Id.*

[12] Habitual conduct may include parents' prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and a lack of adequate housing and employment. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1157 (Ind. Ct. App. 2013), *trans. denied*. The trial court may also consider the services offered to the parent by DCS and the parent's response to those services as evidence of whether conditions will be remedied. *In re B.D.J.*, 728 N.E.2d 195, 201 (Ind. Ct. App.2000).

[13] Children were removed from Mother's care due to the lack of stable housing, substance abuse, and domestic violence. With the objective of assisting Mother in remedying those conditions, DCS made referrals so that Mother could work with a home-based counselor on housing and employment, undergo substance abuse and domestic violence assessments with a licensed mental health counselor, and participate in intensive outpatient therapy for substance abuse. Mother was historically non-compliant with those services.

[14] Tamara Bowden ("Bowden") testified that she had been retained to provide home-based services to Mother. Bowden completed an intake interview with Mother in May of 2019. She interviewed Mother on the porch of a friend's house because Mother did not have independent housing. Mother reported having some work assisting a friend with installing windows. Bowden anticipated meeting with Mother weekly with goals of achieving housing and

stable employment. However, according to Bowden, there were "cancellations [by Mother] all of the time" and Bowden discharged Mother from the program without having any follow-up session to the intake. (Tr. Vol. II, pg. 66.)

[15] Megan McCully ("McCully"), a licensed mental health counselor, testified that she had completed an assessment of Mother's needs with regard to substance abuse treatment and domestic violence counseling.[2] She referred Mother to group sessions of intensive outpatient therapy for substance abuse, with domestic violence counseling to begin after the completion of the substance abuse therapy. McCully testified that Mother attended two group sessions. At one session, Mother provided a drug screen sample and, based upon that screen, McCully recommended in-patient substance abuse treatment for Mother. However, Mother never returned to the group sessions; thus, she did not receive in-patient therapy, nor did she progress to domestic violence counseling. Mother was unsuccessfully discharged from the sixteen-week program.

[16] Daionah Jordan ("Jordan") testified that she supervised visits between Mother and Children. Jordan provided transportation to different public locations because Mother did not have her own residence. Jordan testified that Mother was inconsistent with visits, reporting to Jordan that her phone did not work, but ultimately admitting that her addiction interfered with following through

---

[2] Reportedly, Mother had been the victim of domestic violence; J.G. had choked Mother and she bit him to make him let go of her.

with visits. Although Mother and Children appeared to have a bond, and visits were pleasant, the visits were decreased from twice weekly to once weekly. This action was taken because missed visits caused sadness to Children, Mother "wasn't confirming for weeks at a time," and the visits were "like a rollercoaster." *Id.* at 59. Eventually, Mother was unsuccessfully discharged from the parenting time program.

[17] Family case manager Tiffany Watson ("Watson") testified that Mother had not maintained contact with DCS; accordingly, Watson lacked knowledge of whether Mother had either employment or housing. Mother had last exercised parenting time and last participated in drug screening sometime in 2018. Mother had appeared at some CHINS proceedings, without reporting housing or employment. Mother also attended a team meeting in June of 2018, but she had walked out before the meeting concluded. Watson characterized Mother as a "non-compliant" DCS client. *Id.* at 11.

[18] Based upon this evidence, the court concluded that none of the conditions leading to Children's removal were likely to be remedied. Mother argues that this conclusion is not well-founded because the reported incident of domestic violence is remote and Watson, as case manager, provided little or no evidence of Mother's current circumstances. The contention that any domestic violence is remote and unlikely to reoccur is, at bottom, a request to reweigh the evidence. Moreover, Mother's argument ignores the testimony that little was known about her current situation simply because Mother failed to maintain contact with DCS, her attorney, or any service provider. She failed to provide

regular or recent drug screens. *See In re A.B.*, 924 N.E.2d 666, 671 (Ind. Ct. App. 2010) (recognizing that a parent may not make herself unavailable for services such as drug screening and then claim a lack of evidence of current circumstances). There is sufficient evidence that conditions leading to Children's removal will not likely be remedied.

[19]    The court also concluded that continuation of the parent-child relationships would pose a threat to Children because it presented a barrier to the plan of adoption. Because the controlling statute is written in the disjunctive, we need not address whether there is sufficient evidentiary support for this conclusion. *In re L.S.*, 717 N.E.2d at 209.[3]

[20]    Mother also contends that DCS failed to present clear and convincing evidence that termination is in Children's best interests. In determining what is in a child's best interests, the court must look to the totality of the evidence. *In re A.D.S.*, 987 N.E.2d at 1158. Mother failed to avail herself of the opportunities afforded to her; the service providers uniformly testified that Mother was inconsistent and non-compliant. Critically, she failed to address her use of methamphetamines. On the other hand, family case manager Watson and foster parent R.E. testified that Children were doing very well in their pre-adoptive placement. The Court Appointed Special Advocate, who had visited

---

[3] However, we acknowledge that parental rights may not be terminated solely because the court concludes there is a better home for a child than the parental home. *See In re V.A.*, 51 N.E.3d at 1151.

with Children on eleven occasions over an eighteen-month period of time, recommended termination of Mother's parental rights.

[21] Mother argues that Children should be left longer in R.E.'s care without termination of rights, as R.E. is the paternal grandmother of Mother's oldest child and may be willing to continue her role as a foster parent as opposed to adoptive parent. In support of her contention, Mother directs our attention to *In re R.S.*, 56 N.E.3d 625 (Ind. 2016), where the Indiana Supreme Court reversed a termination of parental rights after concluding that the State had failed to prove that termination was in R.S.'s best interests. The Court observed, "when a child is in relative placement, and the permanency plan is adoption into the home where the child has lived for years already, prolonging the adoption is unlikely to have an effect upon the child." *Id.* at 630. The Court also indicated that R.S.'s father had "repeatedly expressed his desire and willingness to continue to develop as a person and a parent for R.S." *Id.* The facts of this case are readily distinguishable from the facts of *R.S.* By all indications, Mother has been unable or unwilling to develop her skills as a parent. There is ample evidence to support the trial court's conclusion that termination of Mother's parental rights is in Children's best interests.

# Conclusion

[22] DCS presented sufficient evidence to support the termination decision.

[23]    Affirmed.

Crone, J., and Altice, J., concur.